**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Patricia Nance, et al., ) | No. CV-13-8011-PCT-FJM |
| Plaintiffs, ) | **ORDER** |
| vs. ) | |
| Toyota Motor Sales USA, Inc.; Toyota ) Motor Corp.; Takata Corp., ) | |
| Defendants. ) | |

The court has before it defendants' motion for summary judgment (doc. 74), plaintiffs' response (doc. 76), and defendants' reply (doc. 79).

**I.**

This is a products liability action arising out of a single vehicle rollover crash that occurred on September 19, 2010 in Coconino County, Arizona. Decedent Kevin Nance was driving a 1999 Toyota 4Runner southbound on Forest Service Highway 505 outside of Flagstaff. He lost control of his vehicle, causing the vehicle to roll multiple times. Although he stayed strapped into his seatbelt, at some point during the crash, decedent's head struck the ground, possibly through the sun roof, causing severe head trauma, resulting in his death. There were no eyewitnesses to the crash.

Plaintiffs, decedent's statutory beneficiaries, filed this action under Arizona's

1  wrongful death statute, asserting claims for strict products liability, negligence, breach of
2  warranty, and punitive damages. On December 30, 2013, we denied plaintiffs' motion to
3  amend the Rule 16 scheduling order to extend the time for plaintiffs to disclose their expert
4  witnesses. (Doc. 40). We held that plaintiffs failed to show either good cause or excusable
5  neglect to excuse the untimely filing. Because plaintiffs did not timely disclose an expert,
6  they may not use an expert in their case-in-chief. See Fed. R. Civ. P. 37(c)(1).

7  Defendants filed this motion for summary judgment arguing that all of plaintiffs'
8  claims fail as a matter of law.

## II.

10  Defendants first argue that because plaintiffs have no expert for their case-in-chief,
11  they cannot prove their strict products liability or negligence claims. A manufacturer is
12  strictly liable for injuries caused by the use of any product that was in a "defective condition
13  unreasonably dangerous." Dart v. Wiebe Mfg., Inc., 147 Ariz. 242, 244, 709 P.2d 876, 878
14  (1985) (citing Restatement (Second) Torts § 402A (1965)). Therefore, to prevail on their
15  claim for strict products liability, plaintiffs "must show the product was in a defective
16  condition that made it unreasonably dangerous, the defective condition existed when the
17  product left the defendant's control, and the defective condition proximately caused the
18  plaintiffs' injuries." State Farm Ins. Co. v. Premier Manufactured Sys. Inc., 213 Ariz. 419,
19  426, 142 P.2d 1232, 1239 (Ct. App. 2006).

20  Similarly, plaintiffs' negligence claim requires proof that the product was in a
21  defective condition and unreasonably dangerous. Mather v. Caterpillar Tractor Corp., 23
22  Ariz. App. 409, 411, 533 P.2d 717, 719 (Ct. App. 1975). Plaintiffs must also show that
23  defendants failed to use reasonable care in the design of their product, and the negligence
24  proximately caused plaintiffs' injuries. Id.; Golonka v. General Motors Corp., 204 Ariz. 575,
25  581, 65 P.3d 956, 962 (Ct. App. 2003).

26  Defendants argue that plaintiffs cannot prove their claims for strict products liability
27  and negligence because they have no evidence that the seatbelt was in a defective,
28  unreasonably dangerous condition. They argue that expert testimony is required to show

- 2 -

1  defect and causation, and because plaintiffs have no expert, they cannot prove their claims.

2  Arizona courts have developed two tests to determine whether a product was in a
3  defective condition and unreasonably dangerous—the "consumer expectation test" and the
4  "risk/benefit analysis" test. Dart, 147 Ariz. at 244-45, 709 P.2d at 878-79. Under the
5  consumer expectation test, a plaintiff must show that the product "failed to perform as safely
6  as an ordinary consumer would expect when used in an intended or reasonable manner." Id.
7  at 245, 709 P.2d at 879. "No expert testimony is necessary to establish a design defect under
8  the consumer expectation test because the test focuses on the safety expectations of an
9  ordinary consumer rather than those of an expert." Long v. TRW Vehicle Safety Sys., Inc.,
10 796 F. Supp. 2d 1005, 1010 (D. Ariz. 2011) (quotation omitted); Martinez v. Terex Corp.,
11 241 F.R.D. 631, 641 (D. Ariz. 2007); Dietz v. Waller, 141 Ariz. 107, 110, 685 P.2d 744, 747
12 (1984) (holding that plaintiffs "must be permitted to rely upon circumstantial evidence alone
13 in strict liability cases").

14 The consumer expectation test has limited application in design defect cases where
15 "the consumer would not know what to expect, because he would have no idea how safe the
16 product could be made." Dart, 147 Ariz. at 244, 709 P.2d at 878. In such cases, "courts
17 additionally or alternatively employ the risk/benefit analysis to determine whether a design
18 is defective and unreasonably dangerous." Golonka, 204 Ariz. at 581, 65 P.3d at 962.

19 Under a risk/benefit analysis, a plaintiff must prove, in light of relevant factors,
20 whether "the benefits of [a] challenged design . . . outweigh the risk of danger inherent in
21 [the] design." Id. (alterations in original, citation omitted). If the benefits do not outweigh
22 the risks, the design is defective and unreasonably dangerous. Id.

23 Defendants contend that the design and performance of a seatbelt system in the
24 context of a rollover crash is highly technical and not within the understanding of an ordinary
25 consumer. Therefore, defendants argue that only the risk/benefit analysis is applicable in this
26 case. Motion at 9. We disagree.

27 If the facts are such that a "consumer may form an expectation" about how safe a
28 product could be made, the consumer expectations test applies. Dart, 147 Ariz. at 246, 709

1  P.2d at 880. In other words, the consumer expectation test is applicable where "the ordinary
2  consumer, through the use of a product, has developed an expectation regarding the
3  performance safety of the product." Long, 796 F. Supp. 2d at 1010 (quoting Brethauer v.
4  General Motors Corp., 221 Ariz. 192, 198, 211 P.3d 1176, 1182 (Ct. App. 2010)).

5  In Arizona, the consumer expectation test applies to claims that seatbelts were
6  defectively designed and unreasonably dangerous when they failed to restrain belted
7  passengers. In Brethauer, the Arizona Court of Appeals recognized that "a seat belt is a
8  familiar product whose basic function is well understood by the general population." 221
9  Ariz. at 200, 211 P.3d at 1184. "[M]ost consumers use seatbelts daily and are familiar with
10 their single, safety-related function: keeping belted passengers restrained within a vehicle."
11 Id. By their daily use of seatbelts, ordinary consumers have developed an expectation
12 regarding the safety performance of seatbelts. Therefore, the consumer expectations test
13 applies in this case. It is for the jury to decide whether ordinary consumers expect that
14 properly functioning seatbelts will keep a passenger's head inside a vehicle during a rollover
15 crash.

16 We reject defendants' argument that this case is distinguishable from Brethauer and
17 Long because the passengers in those cases were *fully* ejected from the vehicles, whereas
18 here only decedent's head hit the pavement. Defendants describe the relevant inquiry as
19 "how much occupant excursion is permissible for a properly functioning seat belt during a
20 high speed, severe, rollover crash." Reply at 3. Regardless of whether the facts involve full
21 or partial ejection, however, most consumers expect that a seatbelt's "single, safety-related
22 function," is to "keep[] belted passengers restrained within a vehicle." Brethauer, 221 Ariz.
23 at 200, 211 P.3d at 1184. Ordinary consumers could reasonably expect that a seatbelt should
24 restrain a passenger's body within the confines of the vehicle.

25 Similarly, plaintiffs can prove causation under either strict liability or negligence by
26 showing that decedent's head trauma resulted from a defect in the design of the seatbelt,
27 which allowed his head to protrude outside an opening in the vehicle. The proximate cause
28 of an injury is defined as "that which, in a natural and continuous sequence, unbroken by any

- 4 -

1 efficient intervening cause, produces an injury, and without which the injury would not have
2 occurred." Robertson v. Sixpence Inns of Am., Inc., 163 Ariz. 539, 546, 789 P.2d 1040,
3 1047 (1990). A defect causes an injury if it helps produce the injury, and if the injury would
4 not have happened without the defect. A plaintiff "need only present probable facts from
5 which the causal relationship may be inferred. Id.

6 Citing a medical malpractice case, defendants contend that plaintiffs need expert
7 testimony to establish causation. See Benkendorf v. Advanced Cardiac Specialists
8 Chartered, 228 Ariz. 528, 269 P.3d 704 (Ct. App. 2012). But there is no requirement under
9 Arizona law that expert testimony be given in a products liability action. Dietz, 141 Ariz.
10 at 110, 685 P.2d at 747. Instead, a jury could reasonably infer in this case that a design
11 defect in the seatbelt proximately caused decedent's injuries.

12 Defendants' motion for summary judgment on plaintiffs' strict products liability and
13 negligence claims is denied.

## III.

15 Defendants also seek summary judgment on plaintiffs' claim for breach of express and
16 implied warranties. Plaintiffs claim that defendants expressly and impliedly warranted to
17 each buyer and user that the vehicle was reasonably fit and safe for its intended purpose, and
18 that the vehicle was of merchantable quality. Defendants contend that they are entitled to
19 summary judgment because plaintiffs have failed to show either an express warranty or
20 privity between decedent and defendants.

21 Under Arizona law, privity of contract is required to maintain an action for breach of
22 an implied warranty. Chaurasia v. General Motors Corp., 212 Ariz. 18, 24, 126 P.3d 165,
23 171 (Ct. App. 2006). Purchasers who buy vehicles from dealerships and other third parties
24 are not in privity of contract with manufacturers. Id. Plaintiffs have made no effort to
25 establish either that decedent bought the vehicle from defendants, or that there was otherwise
26 privity between decedent and defendants. Nor do plaintiffs attempt to identify an express
27 warranty that applies to the subject vehicle. Therefore, plaintiffs have failed to support their
28 claims for breach of warranties. Defendants' motion for summary judgment on plaintiffs'

1 breach of warranty claims is granted.

## IV.

Plaintiffs concede they have no evidence to support their punitive damages claim. Reply at 11; Plfs' Resp. to Def's SOF ¶ 18 (doc. 77 at 9). Defendants' motion for summary judgment on the claim for punitive damages is granted.

## V.

**IT IS ORDERED GRANTING IN PART AND DENYING IN PART** defendants' motion for summary judgment (doc. 74). Summary judgment is granted on plaintiffs' claims for breach of express and implied warranties and for punitive damages. Summary judgment is denied on plaintiffs' claims for strict products liability and negligence.

DATED this 22nd day of September, 2014.

*Frederick J. Martone*
Frederick J. Martone
Senior United States District Judge